**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                  NO. 11-CR-1600 WJ

JOSE VALENTIN VALENZUELA-PEREZ,

        Defendant.

**MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR VARIANCE**

THIS MATTER comes before the Court on Defendant Jose Valentin Valenzuela-Perez's Motion for Variance, Reasonable Sentence and Sentencing Memorandum, filed August 9, 2011 (**Doc. 19**). Defendant requests a variance and departure from the sentencing guideline range based upon facts particular to Defendant, and also upon the asserted unreasonableness and lack of empirical basis of the guidelines range. After considering the submissions of the parties and hearing oral argument, the Court DENIES Defendant's motion, and finds that a sentence within the correctly calculated sentencing guideline range is a reasonable sentence and is a sentence that is sufficient but not greater than necessary to satisfy the goals of sentencing.

**Background**

On June 15, 2011, Defendant plead guilty to violating 8 U.S.C. § 1326(a) and (b), illegal re-entry. Defendant's plea was in accord with a Non-Standard Fast Track plea agreement approved by the U.S. Attorney and the U.S. Department of Justice for illegal-reentry defendants. The pre-sentence report ("PSR") found that Defendant's adjusted offense level was 9, and his

criminal history category was V, rendering a guideline range of eighteen to twenty-four months. Defendant does not contest the factual recitations in the PSR or the calculation of the guideline range.

According to Defendant's memorandum, he was born into an impoverished and abusive home in Mexico, and began work in the fields at age seven. Sometime during his later teenage years, and after a brief but honorable stint in the Mexican Army, Defendant moved to southern New Mexico, where he has worked both in the fields and in construction. He and Ms. Norma Martinez have three Children: Christopher, Joanna, and Adam, aged respectively thirteen, six, and four years.

Defendant informs the Court that his children are subject to unfortunate challenges both to their physical and their mental health. He submits medical records reflecting emotional difficulties that his oldest son, Christopher, is experiencing in connection with Defendant's incarceration, as well as Christopher and Joanna's struggle with obesity and Adam's delayed speech development.

Defendant represents that during his time in this country he has worked hard and honestly. He also concedes that he has struggled with alcohol abuse. Defendant's criminal history reflects a fair parcel of misdemeanor convictions, including four Driving While Intoxicated ("DWI") convictions, and a conviction of Battery against Ms. Martinez, the mother of his children. Defendant has also been convicted of four felonies: two previous illegal reentry convictions, a Possession of a Controlled Substance conviction, and a Tampering with Evidence conviction. He was deported from the United States in 2006, 2008, and 2009. The criminal history points attributable to Defendant's misdemeanor and felony convictions place him in Category V, which is only one category below the highest criminal history category.

**Discussion**

**I. Variance and Departure**

Defendant requests that the Court impose a sentence of shorter duration than the sentencing guidelines recommendation of eighteen to twenty-four months. This request takes the form alternatively as either a departure or a variance. In support of his request, he offers his factual circumstances to the Court, arguing that his situation is so different from the mainline of illegal reentry crimes, and so deserving of leniency, as to merit a below-guidelines sentence.

'Variance' and 'departure' are of course terms of art, and though the outcome—a non-guidelines sentence—might be the same, different analyses are required. *See United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007). A departure involves application of Chapter 4 or 5 of the sentencing guidelines, while a variance involves consideration of the sentencing factors in 18 U.S.C. § 3553(a). *Id.*

Defendant requests a departure based on USSG § 5H1.6. That section states that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." Thus, a departure based on family ties and responsibilities should only be granted in "extraordinary circumstances." *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir. 1991). The commentary to § 5H1.6 reads: "the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration"; on the other hand, consideration of such hardship is appropriate when the "loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant." USSG § 5H1.6, comment 1(B)(ii).

Defendant asserts that the struggles facing his children qualify as extraordinary circumstances of hardship sufficient to justify a downward departure.  The Court certainly does not wish to make light of those struggles, nor of the emotional difficulty attendant upon the incarceration of a child's parent.  However, those difficulties do not remove Defendant's case from the heartland of similarly situated defendants.  The emotional difficulty of separation, the physical symptoms sometimes associated with such emotion, and the monetary hardship from loss of income are inherent in the very nature of incarceration for any defendant with family responsibilities. The Court therefore will not grant Defendant a downward departure.

As to Defendant's request of a variance, the analysis is different but the result will be the same.  18 U.S.C. 3553(a) provides factors for consideration in meeting the goals of sentencing. Those goals are: "(a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence for criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  USSG § 3553(a)(2).  The Court considers, in devising a sentence to meet those goals, the following factors: "(1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing . . .; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution." *Rita v. United States*, 551 U.S. 338, 351 (2007).

In this case, the Court determines upon consideration of all the factors that a within-guidelines sentence meets the sentencing goals.  In particular, the Court notes factor (6): "the need to avoid unwarranted sentence disparities among defendants with similar records who have

4

been found guilty of similar conduct." As moving as Defendant's proffered evidence might be, nothing in it is so out of the ordinary as to make Defendant's case substantially different from other similarly situated Defendants who have committed similar crimes. To follow Defendant's argument to its logical conclusion, only those Defendants disconnected from all human association would merit a guidelines sentence. Such a result would clearly thwart the purposes of sentencing enumerated in § 3553(a).

Moreover, a problem exists with Defendant's arguments, both for a variance and for a departure. The Defendant is a citizen of Mexico, and is presently in the United States illegally. Thus, Defendant, as he acknowledges, "will be deported. He and his three American children will once again be separated. He will not be able to help his son, Christopher." (Doc. 19 at 3.) Under current immigration law and considering Defendant's significant prior criminal history, the Court assesses the likelihood of the Secretary of Homeland Security allowing Defendant to legally reenter the United States after deportation as slim to none. Consequently, regardless of the length of Defendant's sentence, he will be deported and will remain apart from his wife and children unless they relocate to Mexico. Defendant's argument that a shorter sentence could address the problems with his children appears to carry little weight, even in Defendant's own motion.

In the same vein, the Court notes that Defendant has previously been deported three times, and has returned illegally each time. If the Court were to grant Defendant untoward leniency on this, his third illegal reentry, the Court would risk undermining the sentencing purposes of promoting respect for the law and deterring further commission of crimes.

Therefore the Court does not find sufficient reason in Defendant's particular circumstances to grant him a downward departure or variance.

**II. Empirical basis of the Guidelines**

Defendant makes a wholly different sort of argument for a variance; namely, that the very sentencing guideline range is unreasonable, and unsupported by empirical evidence. This argument is made under *United States v. Kimbrough*, 552 U.S. 85 (2007), and is meant to apply categorically to sentencing for illegal reentry, apart from any particular facts about the Defendant.

Defendant argues vigorously that the sentencing guidelines treat the crime of illegal reentry in an unjust and undeservedly harsh manner. In attempting to characterize the unnecessarily severe nature of the guidelines sentence, Defendant asserts in particular the moral neutrality of illegal reentry crimes, as opposed to crimes such as murder or rape.[1] (Doc. 19 at 6.)

Defendant is apparently highlighting the difference between crimes that are *malum in se* from those which are *malum prohibitum*. However, as it is well to note, while the underlying conduct of a *malum prohibitum* crime may not be itself morally wrong, the fact that it is prohibited alters the equation. Willful law-breaking denotes a lack of respect for the law-making authority; and to the extent the authority is *owed* respect and obedience—such as when it is a sovereign exercising its lawful authority over territory subject to its rule—then such disobedience can indeed itself be a breach of moral duty. *Malum prohibitum*, after all, is still *malus*.

---

[1] One is struck, upon considering Defendant's proffered crime of "rape," that the underlying conduct in a man's rape of a woman—sexual intercourse—is also not criminal in itself. It is the fact that a man forces a woman to engage in sexual intercourse without obtaining her *consent*, thereby violating her right to control the integrity of her own body, which makes the act criminal.

This flaw in Defendant's argument becomes clear when he further asserts that his crime, which he characterizes as crossing an "imaginary boundary," is a crime because "immigrants are perceived to be causing harm by their very presence in this country." (Doc. 19 at 6.) Defendant has left out the concept of illegality. The crime of illegal reentry is obviously not a criminalization of immigration. It is a criminalization of circumventing the immigration laws of the United States, by surreptitiously returning after having been deported.[2]

Nevertheless, though Defendant invites the Court to engage in an empirical and philosophical inquiry into the foundations of the Sentencing Commission's determinations, the Court declines to do so.

In *United States v. Kimbrough*, 552 U.S. 85 (2007), the Supreme Court allowed a district court the discretion to disagree with the guidelines' non-empirically-based disparate treatment of crack and powdered cocain. Defendant argues that this Court should manifest a similar disagreement with the guidelines' treatment of illegal reentry. The Court declines such disagreement; and more importantly, the Court declines to undergo the analysis required by Defendant's argument.

The Court feels it is on solid ground here. As appellate courts in other circuits have said addressing the same issue, "[w]hatever appropriate deviations it may permit or encourage at the discretion of the district judge, *Kimbrough* does not force district or appellate courts into a piece-by-piece analysis of the empirical grounding behind each part of the sentencing guidelines." *United States v. Duarte*, 569 F.3d 528, 530 (5th Cir. 2009). Indeed, unlike Defendant's

---

[2]Much of the weight of Defendant's argument appears to be an incognito criticism of the excessive stringency of the immigration laws of the United States. Such an argument may carry significant persuasive force; it certainly has a proper venue, which is not this Court.

nonfrivolous arguments concerning his *particular* circumstances, the Court is not

> *required* to consider . . . an argument that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation.  [A judge] should not have to delve into the history of a guideline so that he can satisfy himself that the process that produced it was adequate to produce a good guideline.  For if he is required to do that, sentencing hearings will become unmanageable, as the focus shifts from the defendant's conduct to the 'legislative' history of the guidelines.

*United States vs. Aguilar-Huerta*, 576 F.3d 365, 367–68 (7th Cir. 2009) (internal citations omitted) (emphasis in original); *see also United States v. Tapia-Cortez*, 327 Fed.Appx. 793 (10th Cir. 2009) (unpublished) (refusing to set aside the presumption of reasonableness for within-guidelines sentences for illegal reentry).   This Court has neither the desire nor the time and resources to engage in a piece-by-piece, paralysis-by-analysis, review of what the U.S. Sentencing Commission did or didn't do in formulating specific guideline provisions.  To do so would result in unmanageable sentencing hearings; and the danger of unmanageable sentencing hearings is acutely felt, especially in a southwest border district such as New Mexico.

 The Court, finding no grounds warranting either a departure or variance, shall proceed to sentence Defendant to a "within guidelines" sentence.

 **SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE